UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RONALD MOSCHETTA,

                         Plaintiff,

             -against-

FINRA
*Industry Regulator Authority Inc.,*

                        Defendant.
---------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 25-2038 (GRB) (ARL)

**LINDSAY, Magistrate Judge:**

      The *pro se* plaintiff, Ronald Moschetta ("Moschetta"), commenced this action on February 20, 2025, in the Supreme Court of the State of New York, County of Nassau, against the defendant, Financial Industry Regulatory Authority, Inc. ("FINRA"), alleging that FINRA harmed his reputation, career and financial well-being. ECF No. 1-2. The complaint includes causes of action for defamation, negligence, tortious interference, and "abuse of power and regulatory overreach." *Id*. On April 11, 2025, FINRA removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1331, 1441, and 1446. On April 17, 2025, FINRA filed a premotion conference letter in anticipation of its motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The following day, District Judge Brown referred the letter and any dispositive pretrial motions to the undersigned. On June 6, 2025, FINRA filed its motion to dismiss, the motion presently before the Court. For the reasons set forth below, the undersigned respectfully recommends that the defendant's motion be granted.

BACKGROUND

      The following facts were drawn from the complaint and are accepted as true for the purposes of evaluating the defendant's motions to dismiss. *See, e.g., Chambers v. Time Warner*,

Inc., 282 F.3d 147, 152 (2d Cir. 2002).  In addition, the Court has considered documents that are incorporated by reference or integral to the complaint and public SEC filings.  *Olagues v. Perceptive Advisers LLC*, No. 15-CV-1190 (AJN), 2016 WL 4742310, at *2 (S.D.N.Y. Sept. 9, 2016), on reconsideration, No. 15-CV-1190 (AJN), 2017 WL 3605511 (S.D.N.Y. July 26, 2017), *aff'd sub nom. Olagues v. Perceptive Advisors LLC*, 902 F.3d 121 (2d Cir. 2018) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).  The Court has also taken judicial notice of FINRA's public rules, registration requirements and the reports in which they are maintained under Federal Rule of Evidence 201.  *See Forgione v. Gaglio*, No. 13 CIV. 9061 (KPF), 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015).

A. **The Parties**

Moschetta resides in Nassau County, New York.  Compl. ¶ 3.  He is a former CEO and registered representative of Strasbourger Pearson Tulcin Wolff Inc. (SPTW), a broker-dealer.  *Id*.  FINRA is a private, not-for-profit, self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, et seq., amending the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq. (the "Securities Exchange Act").  *See* FINRA Mem. at 1.  FINRA is authorized by Congress to regulate securities firms and their associated persons who buy and sell securities, with oversight from the SEC.  *See Fiero v. Fin. Indus. Regul. Auth., Inc*., 660 F.3d 569, 571 (2d Cir. 2011).[1]  To this end, FINRA "'is responsible for conducting investigations and commencing disciplinary proceedings against [its] member firms and [its] associated member representatives relating to compliance with the federal securities laws and regulations.'"  *Id*. (citing *D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.,* 279 F.3d 155, 157

---

[1] The Securities Exchange Act generally requires any broker or dealer transacting in securities to join an association of broker-dealers registered with the SEC as a national securities association.  *See* 15 U.S.C. § 78o(b)(8), (b)(1).

(2d Cir. 2002)).  The process is codified in FINRA's Code of Procedure, which has been approved by the SEC and sets forth the manner in which disciplinary proceedings must proceed. *See* FINRA Rule 9000, *et seq.*; 15 U.S.C. § 78s(b)-(c).[2]

The Securities Exchange Act also expressly requires FINRA to "establish and maintain a system for collecting and retaining registration information," including "a readily accessible electronic or other process" to provide prompt information regarding the registration information of "members*." Tanjutco v. NYLife Sec. LLC*, No. 23-CV-4889 (BCM), 2024 WL 4135686, at *9 (S.D.N.Y. Sept. 10, 2024) (citing 15 U.S.C. § 78o-3(i)(1)(A)-(B)).  The registration information includes "disciplinary actions, regulatory, judicial, and arbitration proceedings, and other information required by law, or exchange or association rule, and the source and status of such information." 15 U.S.C. § 78o-3(i)(5).  FINRA maintains registration information in its Central Registration Depository ("CRD") database and makes information from CRD publicly available through FINRA's online investor protection tool, BrokerCheck.[3]  *Id.* at *2.

B. **The Marina Acquisitions Transaction**

In 2007, Moschetta was a registered representative of SPTW when the firm offered a private placement investment known as the "Marina Acquisitions 1." Compl. ¶ 5.  From 2007 to 2009, various regulatory bodies, including FINRA, conducted audits of Marina Acquisitions 1 and issued "no-action" letters confirming no wrongdoing. *Id.* ¶ 7.  However, by 2008 or 2009, the Marina Acquisitions deal was suspended and Moschetta claims that all investor funds were returned. *Id.* ¶ 6.

---

[2] The FINRA Rules are publicly available on FINRA's website at https://www.finra.org/rules-guidance.
[3] "A registered representative's BrokerCheck listing is a public record, the contents of which (though not necessarily the truth of those contents) are subject to judicial notice and may be considered in connection with a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6)." *Tanjutco v. NYLife Sec. LLC*, No. 23-CV-4889 (BCM), 2024 WL 4135686, at *2 (S.D.N.Y. Sept. 10, 2024) (citing *Forgione v. Gaglio*, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015)).

By 2009, Moschetta was appointed CEO of SPTW and claims to have inherited legacy issues from the firm, including regulatory violations dating back to 1975.  *Id.* ¶ 8.  Of particular note, in 2008, Moschetta claims there was a lockout and theft of records at SPTW's New York City office by barred brokers Andrew Gonchar and Tony Polyviou, who had relocated company files to an off-site location without authorization.  *Id.* ¶¶ 9, 10.  Moschetta alleges that he reported the brokers' conduct to FINRA but it failed to investigate or address his concerns.  *Id.* ¶ 10.

Nonetheless, in 2012, FINRA initiated Disciplinary Proceeding No. 2010024917601 against Moschetta pursuant to its Code of Procedure.  *See* FINRA Mem. at 6.[4]  According to FINRA, Moschetta was the designated Custodian of Records of Marina Acquisitions and FINRA was investigating reports of millions of dollars raised by the firm for a private placement investment that never closed, and in which customer monies raised were not refunded.  *Id.*  Moschetta asserts that FINRA accused him of misusing investor funds, which he claims were not substantiated by evidence or part of any formal hearing.  Compl. ¶ 13.

Following a hearing held in May 2013, FINRA imposed fines on Moschetta in connection with the Marine Acquisitions deal, alleging failure to produce documents.  Compl. ¶ 12.  Moschetta was also barred from associating with any FINRA member firm in any capacity for violations of FINRA Rules 20107 and 8210.  *See* FINRA Disciplinary Actions Online, Proceeding No. 2010024917601 at 4-6, 12-13.  Moschetta complains that FINRA stated that he

---

[4] FINRA has provided the Court with the following web address for the decision https://www.finra.org/sites/default/files/fda_documents- /2010024917601_FDA_D813840%20%282019-1562928563990%29.pdf.  The Court attempted to open the document by cutting and pasting the address but received an error message. The decision can be opened by directly using the hyperlink in FINRA's memorandum.

4

had engaged in criminal activity in its public disclosures, severely damaging his reputation and ability to conduct business.[5]  *Id.*

In fact, on the landing page of Moschetta's BrokerCheck Report provides:

> FINRA has barred this individual from acting as a broker or otherwise associating with a broker-dealer firm.  FINRA has suspended this individual from acting as a broker. Please see the detailed report for more information. FINRA has suspended this individual from acting as a broker. Please see the detailed report for more information.

*See* FINRA Mem. at 7.[6]  The detailed report provides:

> MOSCHETTA IS FOUND TO HAVE FAILED TO COMPLETELY RESPOND TO FINRA REQUESTS FOR DOCUMENTS, IN VIOLATION OF FINRA RULES 8210 AND 2010, THEREFORE HE IS BARRED FROM ASSOCIATION WITH ANY FINRA MEMBER IN ANY CAPACITY.

*See* Detailed Report at 17.  The BrokerCheck Report also includes a "Regulator Statement" as to the OHO Decision:

> HEARING PANEL DECISION RENDERED OCTOBER 15, 2013 WHEREIN MOSCHETTA IS FOUND TO HAVE FAILED TO COMPLETELY RESPOND TO FINRA REQUESTS FOR DOCUMENTS, IN VIOLATION OF FINRA RULES 8210 AND 2010, THEREFORE HE IS BARRED FROM ASSOCIATION WITH ANY FINRA MEMBER IN ANY CAPACITY AND ORDERED TO PAY COSTS OF THE HEARING IN THE AMOUNT OF $2,238.14. DECISION IS FINAL DECEMBER 2, 2013.

*Id.* at pp. 16-17.  Finally, Moschetta's BrokerCheck Report also includes other disclosures, which FINRA contends are required, including his failures to comply with arbitration awards, failure to disclose registration information to FINRA, denial of a state licensing application due

---

[5] FINRA acknowledges that since 2013, FINRA has maintained information about the Moschetta's final disciplinary action in CRD, while making a subset of that information publicly available via BrokerCheck. *See* 15 U.S.C. §78o-3(i)(5).

[6] FINRA provided the following web address for the BrokerCheck Report: https://brokercheck.finra.org/individual/summary/1100365 and https://files.brokercheck. finra.org/individual/ individual_1100365.pdf.  The undersigned was able to access the report by utilizing the hyperlink in the memorandum.

5

to "fraud through omission and misrepresentation," and a customer arbitration award against him involving allegations of "common law fraud." *Id.* at 11-16, 20-28.

According to FINRA, the disciplinary action against him became final in 2013 but Moschetta did not appeal the final disciplinary action.[7] FINRA Mem. at 1. Instead, Moschetta filed the instant action eleven years the final decision asserting causes of action sounding in defamation, negligence, tortious interference and abuse of power and seeking: (1) to recover monetary damages relating to FINRA's final disciplinary action against him; (2) to remove information regarding the final disciplinary action from CRD and BrokerCheck; and (3) to restrain and enjoin FINRA from carrying out its regulatory duties. *See* ECF No. 1-2.

## DISCUSSION

### A.  Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), aff'd, 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

---

[7] Any party aggrieved by a final FINRA disciplinary action may seek review by the SEC. 15 U.S.C. § 78s(d); FINRA Rule 9370.

rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

"A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Florimon v. Allstate Ins. Co.,* 616 F. Supp. 3d 180, 185 (D. Conn. 2022) (citing *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007)). However, "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230–31 (2d Cir. 2016). *Id.*

### B.     FINRA's Immunity

FINRA's threshold argument is that the complaint must be dismissed because it is absolutely immune for any action it took in performance of its regulatory functions under the Securities Exchange Act. "There is no question that an SRO [like FINRA] and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 637 F.3d 112, 115 (2d Cir. 2011) (citing *DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 96 (2d Cir. 2005)). "This immunity extends both to affirmative acts as well as to an SRO's omissions or failure to act." *Id*. In addition, FINRA's absolute immunity is not restricted by the type of claims asserted against it – the immunity covers damages claims as well

7

as claims for declaratory or injunctive relief. *See Cashmore v. Fin. Indus. Regul. Auth.,* No. 18-CV-1198S, 2020 WL 6566302, at *6 (W.D.N.Y. Nov. 9, 2020).

In this matter, all of Moschetta's claims arise from FINRA's regulatory activities. Specifically, Moschetta alleges that FINRA "initiated multiple investigations" into securities transactions, "imposed fines and penalties" on him; and "failed to properly investigate" his claims about the theft of documents. Compl. ¶¶ 11, 12, 17. He further asserts that FINRA's alleged "negligence contributed to [his] inability to defend against regulatory actions." *Id.* ¶ 18. In addition, Moschetta claims that FINRA breached its duty to maintain and report registration information when it accused him of "misusing investor funds and included allegations of criminal activity in their public disclosures." *Id.* ¶ 13. Finally, Moschetta contends that "FINRA's public disclosures . . . were not substantiated by evidence or part of any formal hearing" but it, nonetheless, made "damaging statements about [him] . . . in public disclosures such as FINRA's BrokerCheck" Id. ¶¶ 14, 15. The law in this Circuit is clear that whether Moschetta claims that FINRA acted affirmatively or failed to act and whether he is seeking reputational damages or declaratory/injunctive relief, his claims are barred. Accordingly, the undersigned respectfully recommends that the complaint be dismissed.

### C. FINRA's Remaining Arguments

FINRA also argues that (1) there is no private right of action against FINRA; (2) Moschetta failed to exhaust his administrative remedies; and (3) Moschetta has not stated a plausible claim. While there may be merit to these defenses, the undersigned need not address the balance of FINRA's arguments having found that Moschetta's claims are barred by regulatory immunity.

8

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
November 19, 2025

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge